IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TYLER RAYSHON THOMAS, | ) | CASE NO. 1:23-cv-00612-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

I. **Introduction**

Plaintiff, Tyler Rayshon Thomas ("Thomas"), seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).

Thomas raises one issue on review of the Administrative Law Judge's ("ALJ") decision, arguing that the ALJ's Residual Functional Capacity ("RFC") determination is the product of legal error because the ALJ failed to properly evaluate Thomas' subjective complaints pursuant to SSR 16-3 and 20 C.F.R. §404.1529. 416.929, leaving the Court ubable to proceed to a substantial evidence review. (ECF Doc. #14, at p. 1). Because the Administrative Law Judge applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Thomas' application for DIB and SSI be affirmed.

1

II.   **Procedural History**

Thomas filed for DIB and SSI on March 24, 2021, alleging a disability onset date of May 29, 2020. (Tr. 329-50). The claims were denied initially and on reconsideration. (Tr. 49, 56, 64, 72). Thomas then requested a hearing before an ALJ. (Tr. 132-33). Thomas, represented by counsel, and a Vocational Expert ("VE") testified before an ALJ on April 20, 2022. (Tr. 467-91). At the hearing, Thomas sought to amend his claim to seek benefits for a closed period dating from the alleged onset date of May 29, 2020, through September 24, 2021, which is when Thomas returned to substantial gainful work activity. (Tr. 472). On May 3, 2022, the ALJ issued a written decision finding Thomas not disabled. (Tr. 73-89). The Appeals Council denied his request for review on February 9, 2023, making the hearing decision the final decision of the Commissioner. (Tr. 90-95).

On May 23, 2023, the case was remanded to the Commissioner by this Court, based upon an Unopposed Motion to Remand Pursuant to Sentence Six of 42 U.S.C. §405(g). (Tr. 101). Accordingly, a second hearing was held before the ALJ on July 11, 2024, where Thomas and a different VE testified. (Tr. 22-42). The ALJ then issued a written decision on August 12, 2024, again finding Thomas not disabled. (Tr. 1-14). The Commissioner moved to reopen and reinstate the case on March 28, 2025. (ECF Doc. #10).

III.  **Evidence**

A.   **Personal, Educational, and Vocational Evidence**

Thomas was born September 3, 1980. (Tr. 49). He was 39 years old on his alleged onset date of May 29, 2020, making him a younger individual according to agency regulations. (Tr. 47). His date last insured ("DLI") is December 31, 2025. (Tr. 43). He has at least a high school education. (Tr. 47). He has past relevant work as a fast-food services manager, DOT #185.137-

2

010, SVP 5, light exertional level as generally performed and medium exertional level as he actually performed it. (Tr. 12).

### B. Relevant Medical Evidence

A review of the medical records reveals that on March 10, 2020, Thomas presented at the South Pointe hospital emergency department for an asthma exacerbation. (Tr. 532). His past medical history included HIV diagnosed in 2006 and avascular necrosis of the right hip which had been treated with a right hip joint replacement in 2017. (*Id.*). As his symptoms were persistent after treatment he was admitted for further management. (Tr. 534).

On August 18, 2020, Thomas was seen by Willonda Nicholson, RMA, who noted normal gait and station. (Tr. 628). At a January 19, 2021 visit with RMA Nicholson, treatment notes indicate normal gait and station, as as well as normal reflexes and lower extremity strength of +5/5. (Tr. 618) On May 3, 2021, Thomas was seen by by Nicholas Romeo, DO, for purposes of establishing a new patient relationship. (Tr. 762). Thomas reported left pain with ambulation, and was utilizing a walker. (*Id.*). The treatment notes indicated that Thomas had developed avascular necrosis from HIV medications, and that his right hip total arthroplasty in 2017 had been successful.(*Id.*). Thomas' HIV viral load had been checked the prior week and was undetectable. (*Id.*).

Thomas underwent a left total hip arthroplasty on June 23, 2021. (Tr. 794). By July 2, 2021, Thomas was in physical therapy and had achieved "weight bearing as tolerated" status. (Tr. 782). He had 2/5 strength in his left 1-2 Psoas, gluteus medius and hamstring, with 3-5 strength in his left quadriceps. (Tr. 784). A strength measurement of his gluteus maximus was deferred. (*Id.*). He had a walking speed of 15 seconds with a rolling walker, and a lower

extremity functional scale ("LEFS") of 18 out of 80. (*Id.*). His therapist indicated he would request 9 additional PT visits. (Tr. 785).

On 7/20/2021, Thomas reported his pain as a four on a ten point scale and noted his hamstring strength had improved to 3-/5. (Tr. 847). At his July 22, 2021 PT visit, Thomas reported his left hip pain as zero on a ten point scale, and he was ambulating with a cane. (Tr. 854). By July 27, 2022, he reported he was feeling "stronger every day." (Tr. 862). His walking speed had improved to nine seconds with a rolling walker. (Tr. 864). He still had significant left leg weakness, and his therapist recommended continued use of his rolling walker. (Tr. 865). Thomas' July 30, 2021 physical therapy notes showed his left 1-2 Psoas strength improved to 3-/5, his gluteus medius strength improved to 2+/5, and noted his hip addducter strength at 2+/5. (Tr. 872).

An x-ray of Thomas' pelvis and left hip on August 4, 2021 showed stable bilateral total hip arthroplasties. (Tr. 888). At his August 9, 2021 PT appointment Thomas evaluated his pain as one to two on a ten point scale. (Tr. 884). He was cleared for driving, and ambulated from his car using a cane. (Tr. 886). His walking speed was now nine seconds with a rolling walker and 11 seconds with a cane. (Tr. 1366). On August 16, 2021, eight weeks removed from surgery, Thomas reported difficulty walking "community distances," cooking, cleaning or shopping due to left leg weakness. (Tr. 1359). On August 25, 2021, Thomas reported that he "feels he is growing stronger however still weakness in the Quads (sic)." (Tr. 1347). At his September 10, 2021 PT appointment, Thomas' LEFS had improved to 38 out of 80, his walking speed had improved to ten seconds with a cane, and his Timed up and go test ("TUG") had improved from 23 seconds with a cane to 11 seconds with a cane. (Tr. 1338). He was also showing some improvement with leg strength. (Tr. 1340).

4

### C. State Agency Reviewing Opinion Evidence

On July 29, 2021, state agency reviewing physician Steve McKee, MD opined that Thomas was limited to light exertion, with additional restrictions limiting him to occasional climbing of ramps and stairs, but never climbing ladders, ropes or scaffolds; frequent balancing, stooping or kneeling, but only occasional crouching or crawling; avoiding concentrated exposure to extreme heat or cold, humidity, wetness or respiratory irritants such as fumes, odors, dusts, gases or poor ventilation; and no exposure to hazardous machinery including dangerous machinery and unprotected heights. (Tr. 45-47). On September 28, 2021 state agency reviewing physician Gail Mutchler, MD, affirmed the opinion of Dr. McKee, except that she suggested no limitation for wetness, and limited his crawling to frequent. (Tr. 59-61).

### D. Administrative Hearing Evidence

Thomas first testified before the ALJ on April 20, 2022. (Tr. 473-487). He testified that he was living with his cousin, and that Thomas was a 41 year old high school graduate. (Tr. 473-74). After graduating he had attended school to study cosmetology and business management. (Tr. 474). He drives without restriction, and he had not worked during the closed period in question. (Tr. 475). He had received unemployment benefits up until September, 2021. (*Id.*). He began working at Burger King, primarily as a cashier, on September 24, 2021, which corresponds to the end of the closed period. (Tr. 476). He had previously worked at a Popeye's restaurant and a Wendy's restaurant as a general manager. (Tr. 478-79). He also worked as a bank teller. (Tr. 479).

Thomas testified that during the closed period he was incapable of performing simple tasks such as grooming himself without resting between activities. (Tr. 481). He was in constant pain even when laying down, and could not walk long enough to take out the trash. (Tr. 482).

5

When he did walk his hips caused him to be so unstable he required the assistance of either a walker or a cane. (*Id.*). Even now, after having both hips replaced, he still uses a cane to steady himself. (*Id.*). His hip pain was also causing his back and knees to hurt. (*Id.*). It got to the point where he could not stand ot go to the grocery store, or even clip his toenails. (Tr. 482-83).

After the hip replacement surgery he attended physical therapy for about two to three months. (Tr. 483). Otherwise he was basically laying in bed all day. (*Id.*). Anything that required him to stand for more than two or three minutes had to be "broken up into shifts" in order for him to do it. (Tr. 484). He was unable to help with any household chores and relied on his cousin to do them. (Tr. 484-85). His day typically involved getting up around noon, eating breakfast his cousin had prepared, doing some grooming, and then returning to bed. (Tr. 485). His cousin, who worked second shift, would come home around 11:00 p.m., they would then eat dinner, and he would go back to bed. (*Id.*).

On questioning by his attorney Thomas testified that he was using a prescribed walker throughout the closed period. (Tr. 486). The walker had originally been prescribed after he had his first hip replaced in 2017. (*Id.*). By the time he had a left total hip arthroscopy in 2021 the hip had deteriorated to the point that he had no ball joint, and he rquired a walker because he was uncoordinated and wobbly. (Tr. 487) a cane would not have been sufficient to balance him. (*Id.*).

Once Thomas finished testifying VE David Salewsky testified. (Tr. 487-90). VE Salewsky testified that Thomas had past work as a fast food services manager, DOT #185.137-010, with an SVP of 5, light per the DOT, medium as performed. (Tr. 488). For her first hypothetical the ALJ asked the VE to consider an individual of the claimant's age, education and work experience capable of performing light work with the additional limitations that he could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; frequently

6

balance, stoop, kneel and crawl, but only occasionally crouch; could frequently be exposed to extreme cold, extreme heat, humidity, fumes, odors, dust, gases and poor ventilation; and could never be exposed to hazards of unprotected heights or dangerous machinery. (Tr. 488-89). The VE opined that this individual could perform Thomas' past work as generally performed, and could also work as merchandise marker, DOT #209.587-034, light, SVP 2, wih approximately 131,000 jobs in the national economy; as a cleaner and polisher, DOT #709.687-010, light, SVP 2, with approximately 43,000 jobs in the national economy; and as a small products assembler, DOT #706.684-022, ight, SVP 2, with approximately 319,000 jobs in the national economy. (Tr. 489). The VE further testified that employers will typically tolerate 10% or six minutes per hour off task, and 2 days absent per month would be work preclusive. (Tr. 490).

Thomas next testified before the ALJ on July 11, 2024. (Tr. 29-36). He reported he was still working at Burger King. (Tr. 30). Thomas testified that during the closed period in question he was unable to perform even simple tasks such as putting on socks and shoes due to the deterioration of his left hip.(Tr. 33). He would have to break up tasks like brushing his teeth, washing his face, shaving or showering, because he could not stand for extended periods of time. (*Id.*). When he did stand or walk he required a walker in order to maintain his balance. (*Id.*). The pain was so bad that pain medications did not even help him. (*Id.*). He was not able to work until after his left total hip arthroscopy. (*Id.*). He was not able to perform any household chores and relied on his cousin for everything. (Tr. 34). He was spending all of his time in bed, watching television or going through his phone. (Tr. 35).

On questioning by his attorney, Thomas testified he was unable sit at a desk for 40 hours per week during the closed period because it would have caused pain in his lower back and hips.

7

(*Id.*). He also confirmed he was using a walker for the entire period of time he was not working. (*Id.*).

VE Guy Hostetler testified next. (Tr. 36-41). For her first hypothetical the ALJ asked the VE to consider an individual of the claimant's age, education and work experience who can perform light work, but who is limited to occasionally climbing ramps and stairs, but never climbing ladders, ropes and scaffolds; frequently balancing, stooping, kneeling or crawling, but only occasionally crouching; frequently being exposed to extereme cold or heat, humidity, fumes, odors, dusts, gases and poor ventilation; and never being exposed to hazards of unprotected heights or dangerous machinery. (Tr. 37-38). The VE opined this individual could perform Thomas' past work as generally performed, but not as he actually performed it. (Tr. 38). The individual could also work as an assembler, small parts, DOT #706.684-022, SVP 2, strength of light, with approximately 200,000 jobs in the national economy; as an information clerk, DOT #239.567-010, SVP of 2, strength of light, with approximately 75,000 jobs in the national economy, and as a mail sorter, DOT #209.687-026. SVP of 2, strength of light, with approximately 90,000 jobes in the national economy. (Tr. 39).

Thomas' attorney asked whether there would be light or sedentary jobs if an individual required a walker for both balance and ambulation. (*Id.*). The VE opined there would be no light jobs, and only very restricted sedentary jobs, meaning only accommodated work. (Tr. 39-40).

**IV.     The ALJ's Decision**

In her decision dated August 12, 2024, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2. The claimant has engaged in substantial gainful activity (SGA) beginning September 24, 2021 through the date of the decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.      However, there has been a continuous 12-month period from May 29, 2020 to September 24, 2021 when the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.      The claimant has the following severe impairments: osteoarthritis and allied disorders; asymptomatic HIV infection; asthma; and obesity (20 C.F.R 404.1520(c) and 416.920(c)).

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

6.      After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except occasional climbing of ramps and stairs; never ladders/ropes/scaffolds; frequent balance, stoop, kneel and crawl and occasionally crouch; frequent exposure to extreme cold, extreme hot, humidity, and fumes/odors/dusts/gases/ and poor ventilation; and never exposure to hazards (unprotected heights/dangerous machinery).

7.      The claimant is capable of performing past relevant work as a fast-food services manager. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8.      The claimant has not been under a disability, as defined in the Social Security Act, from May 29, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 21-31).

**V.    Law and Analysis**

    **A.    Standard for Disability**

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.      whether the claimant is engaged in substantial gainful activity;

  2.  if not, whether the claimant has a severe impairment or combination of impairments;

  3.  if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

  4.  if not, whether the claimant can perform their past relevant work in light of his RFC; and

  5.  if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[1]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

  **B.**  **Standard of Review**

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

---

[1] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.  Discussion

Thomas brings a single issue for this Court's review, arguing that the ALJ's RFC determination is the product of legal error because the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929, leaving the

11

Court unable to proceed to a substantial evidence review. (ECF Doc. #14, at p. 10). Specifically, Thomas notes that the ALJ's RFC, without explanation, did not include a restriction requiring the use of a wheeled walker despite Thomas' testimony that he required one for walking or balancing throughout the closed period in question. (*Id.*, at p. 11-13). Further, the VE testified that use of a walker to walk or balance would eliminate competitive employment at the light and sedentary levels. (*Id.* at p.13). The ALJ, Thomas contends, provided only a "boilerplate recitation rejecting [Thomas'] subjective complaints but then did nothing more than provide a summary of evidence without discussing any of the factors required under SSR 16-3p and C.F.R. §§404.1529, 416.929." (*Id.*, at p. 15). The ALJ failed to acknowledge significant evidence that supports Thomas' subjective reports of requiring a walker beginning in May, 2020, including evidence of degeneration of his hips due to his HIV medications, the right total hip arthroplasty he underwent tin 2017 and the severity of pain he was experiencing in January, 2021 that led to him quitting his job. (*Id.*, at p. 15-16). In Thomas' view, the ALJ further failed to discuss imaging that revealed osteonecrosis in the left hip and the collapse of the femoral head, as well as the fact that his medical provider "dispensed and fitted [him] with a walker with wheels." (*Id.*, at p. 16; ECF Doc. #18, at p. 2). Finally, Thomas argues that even if state agency medical consultant opinions provide substantial evidence in support of the RFC, the Court is unable to engage in a substantial evidence review because the ALJ failed to properly apply the regulations in making her non-disability determination. (ECF Doc.#14., at p. 18).

The Commissioner responds by arguing that substantial evidence supports the ALJ's RFC determination, and if substantial evidence supports the ALJ's conclusions, this Court is required to affirm, even if the evidence could support a different conclusion. (ECF Doc. #16, at p. 7-8). The Commissioner asserts that the ALJ, in formulating the RFC, considered Thomas'

12

subjective statements along with the objective medical evidence and treatment history appropriately. (*Id.*, at p. 8-9). Further, the ALJ properly considered the persuasiveness of the state agency medical consultants in reaching her conclusions. (*Id.*, at p. 9).

While the Commissioner concedes that there is evidence in the record indicating that Thomas was utilizing a walker through May, 2021, he also argues there are several exampleses in the record during the period in question that showed Thomas walking with a normal gait and with no indication that he required an assistive device. (*Id.*). Further, while Thomas alleged he needed a wheeled walker as of May, 2020, the Commissioner notes that he did not seek treatment for his left hip until January, 2021 and the is no indication in the record of his need for a wheeled walker until May, 2021. (*Id.*, at p. 10). The Commissioner argues that Thomas' own subjective belief that he needed a wheeled walker is insufficient to establish that was medically required. (*Id.*, at p. 11-12). The Commissioner further asserts that the ALJ adequately discussed her consideration of Thomas' subjective complaints (*Id.*, at p. 11-12). Finally, the Commissioner contends the ALJ's consideration of the prior administrative findings was not in error owing to her consideration of a continuing period of disability rather than the closed period Thomas requested as the ALJ denied Thomas' request to consider the closed period. (*Id.*, at p. 13).

### A. The ALJ's determination that no restriction regarding use of a walker should be included in the RFC was supported by substantial evidence.

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 416.946(c)) and must

13

consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. Appx. 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper

14

analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.' "); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

In determining Thomas' RFC, the ALJ clearly gave significant consideration to the question of whether he required a walker during the period between May 29, 2020 and September 24, 2021. The ALJ noted Thomas's testimony that he utilized a walker throughout this period as he had a high level of pain due to the deterioration of his left hip, and he needed the walker to maintain his balance. (Tr. 10). The ALJ also noted, however, that treatment records from August 8, 2020 through February 12, 2021 indicated that Thomas appeared with "a normal gait and there is no indication that [Thomas] needed an assistive device." (Tr. 8). The ALJ further wrote that the record reflected normal gait and reflexes, with muscle strength at 5/5 prior to February 13, 2021. (Tr. 11). The ALJ acknowledged that the record demonstrates that Thomas was utilizing a walker on May 3, 2021, and continued to do so following his hip replacement surgery on June 23, 2021. (Tr. 8). By August 9, 2021, however, he had shown improvement and was ambulating using a cane in one hand. (*Id.*). A left hip x-ray dated August 4, 2021 showed

15

bilateral total hip arthroplasties with hardware in tact, and no fracture or aggressive osseous lesion. (Tr. 11). Finally, the ALJ wrote that by Septermber 24, 2021, Thomas was able to return to substantial gainful activity. (*Id.*).

The ALJ clearly described when during the period in question Thomas required a walker and when it appeared he did not, and in so doing, offered substantial evidence in support of her determination that no requirement for a walker should be included in the RFC. In order for this Court to conclude such a limitation should have been imposed within the RFC, it would have to conduct a reweighing of the evidence, an exercise beyond its purview. Accordingly, the failure to include such a restriction does not countenance remand.

> **B.  The ALJ properly applied SSR 16-3p in considering Thomas' subjective complaints.**

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant

*evidence. See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

      The ALJ properly applied SSR 16-3p in her determination of Thomas' RFC. In evaluating his subjective complaints concerning left hip pain, the ALJ suggested that the medical records were not universally consistent with the severity of his allegations, again noting normal gait, reflexes and muscle strength through much of the period in question. (Tr. 11). The ALJ also considered Thomas' testimony concerning his inability to perform basic activities of daily living without assistance. (Tr. 10). The ALJ wrote that the record supported a worsening of Thomas' condition as of May 3, 2021, when he was first reported to be utilizing a walker, but noted that

17

he had the right total hip arthroplasty the following month, and responded well to physical therapy after the surgery was completed. (Tr. 11). Thomas was able to return to substantial gainful activity on September 24, 2021, just three months after the surgery was performed, further demonstrating a positive response to surgical and therapeutic intervention. (*Id.*). The ALJ also considered the impact of Thomas HIV medication regimen which has rendered him asymptomatic (Tr. 10-11), as well as his asthma treatment protocol involving medications and a rescue inhaler. (Tr. 11). The ALJ's consideration of several of the seven factors outlined in SSR 16-3p, including daily activities; location, duration, frequency, and intensity of the pain or other symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; and treatment other than medication daily activities, provide the requisite substantial evidence in support of her decision to discount Thomas's subjective allegations, and I therefore do not recommend disturbing the ALJ's opinion.

    **C.**     **Substantial supports the ALJ's assessment of the prior administrative medical findings.**

Thomas seems to suggest that the ALJ's evaluation of the persuasiveness of the State agency medical consultants was misguided because the opinions were offered "based upon a continuing period of disability, they did not have the knowledge that Plaintiff had altered his application for a closed period.". (ECF Doc. #14, at p.18). I do note that the record shows that the earlier opinion in question was rendered on July 29, 2021, directly within the closed period (Tr. 47), while the later opinion was dated September 28, 2021, just four days after the conclusion of the requested closed period. (Tr. 61). Thomas offers no explanation of how the consultants' opinions may have changed as a result of the consideration of a closed period, nor

18

why it would necessarily impact the persuasiveness of the opinions. Accordingly, without further support, this argument fails.

I.  Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Thomas' application for DIB and SSI be affirmed.

Dated: February 11, 2026

                                              Reuben J. Sheperd
                                              United States Magistrate Judge

---

**OBJECTIONS**

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\*\*\*

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, 2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019)